**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DONOVAN A. REID,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:22-cv-03112-JMC |
| **MJ LOGISTICS, LLC,** | | |
| | * | |
| *Defendant.* | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Donovan Reid, filed the present lawsuit *pro se* against Defendant, MJ Logistics, LLC, on December 2, 2022, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"). (ECF No. 1). Before the Court is Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment. (ECF No. 62). The Court has considered the motion and Plaintiff's opposition thereto. (ECF No. 65). Defendant did not file a reply and the time to do so has passed. *See* Loc. R. 105.2 (D. Md. 2023). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's motion will be granted.

## I.      BACKGROUND

Plaintiff is a Caribbean-American, black male with post-traumatic stress disorder.  (ECF No. 65-1 at 1).[1]  Defendant is a "moving and express delivery company that directly contracts with Amazon to deliver packages to its customers."  *Id.*  Defendant employed Plaintiff to deliver packages on behalf of Amazon from roughly June 2020 through August 2021.  *Id.*  Plaintiff alleges that he was regularly subjected to harassment and abuse during his tenure with Defendant, including: (1) "constant name calling from co-workers, including being called 'bitch,' 'gay,' 'dirt,' and accused of having HIV-Aids"; (2) being "Routinely subjected to customers on [Plaintiff's] route calling [Plaintiff] the 'N' word"; (3) being falsely accused of being under the influence when reporting operational issues with an Amazon van that Plaintiff drove; (4) being "subjected to the manager's statement 'fuck n---ers' in [Plaintiff's] presence, which also was uttered in the presence of Defendant's owner, who did not reprimand or react to this racial epithet by Defendant's manager"; (5) a co-worker "making the gesture of shooting [] a gun at [Plaintiff] in the workplace"; and (6) being retaliated against for complaining of the above, including Defendant requiring Plaintiff to drive unsafe vans, complaining that Plaintiff worked "too slowly," and increasing the number of deliveries to which Plaintiff was assigned.  (ECF No. 65-1 at 2; ECF No. 1 at 6). Plaintiff's Complaint asserts that this conduct occurred in/on roughly "December 2020, January 2021, February 5th 2021, February 6th 2021, March 2021," and "April 11th, 2021," without providing additional information as to what action(s) occurred on which date(s).  (ECF No. 1 at 5).  Plaintiff voluntarily resigned on August 28, 2021, after giving two-weeks notice.  *Id.* at 8.

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.  For the reasons explained *infra*, the Court will treat Defendant's motion as one for summary judgment and analyze it under that standard.  However, the following facts are not clearly disputed by either party, although the underlying evidence submitted with the present motion does indicate that certain individuals involved in this case dispute some of Plaintiff's factual assertions.  *See* (ECF No. 62-1 at 2) (detailing Plaintiff's factual allegations without contesting them).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 30, 2021, alleging that he was discriminated against with regard to harassment and constructive discharge based on sex, race, and disability.  *Id.* at 6; ECF No. 62-7 at 80–81.  The EEOC then sent Plaintiff a Determination of Charge on September 29, 2022, in which it determined that, based on the evidence before it, the EEOC was "unable to conclude" that Defendant violated either Title VII or the ADA because Plaintiff set forth no evidence of unlawful discrimination.  (ECF No. 62-7 at 6–7).  Specifically, the EEOC informed Plaintiff that:

> We have reviewed your complaints to the Ethics line, which briefly indicate you were subjected to discrimination from individuals *on your delivery route*, by an individual for whom [Defendant] does not have control of, or employ.  There is no evidence available to substantiate the allegations of harassment.  Regarding the issues surrounding deliveries and performance of duties, we're unable to show this rose to the level of discrimination based on any protected class.  To the contrary, [Defendant] provides evidence showing that you tested positive for marijuana following a required urinalysis.  This is grounds for discharge in and of itself, based on policy.

*Id.* (emphasis in original).  The EEOC issued Plaintiff a notice of his right to sue the same day and the present lawsuit ensued shortly thereafter.  *Id.* at 7.

## II.    LEGAL STANDARD

Defendant styles its motion as one for judgment on the pleadings pursuant to Rule 12(c), or in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  "In evaluating a Rule 12(c) motion, courts apply the same standard used for motions brought under Rule 12(b)(6)."  *Brown v. Prince George's Cnty. Bd. of Educ.*, No. GJH-18-2723, 2019 WL 3944983, at *2 (D. Md. Aug. 20, 2019).

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (other citation omitted).  However, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).  "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Reamer*, 556 F. Supp. 3d at 59 (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).  Moreover, "In employment discrimination cases" such as this one, "courts

often take judicial notice of EEOC charges and EEOC decisions" without converting a motion to dismiss into one for summary judgment. *Yampierre v. Balt. Police Dep't*, No. ELH-21-12-9, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citing *Campbell v. Mayorkas*, No. 3:20-cv-697-MOC-DSC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings" offered in conjunction with a motion to dismiss, "thereby converting the motion, or to reject it or simply not consider it." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 626 (D. Md. 2020) (citation omitted). "Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*

Here, the Court will exercise its discretion by treating the motion as one for summary judgment under Rule 56. Discovery in this case began on July 7, 2023, when the Court issued a scheduling order that day. (ECF No. 19). The discovery period has now passed and both parties have been sufficiently afforded the opportunity to support their arguments with evidence obtained during that discovery, as highlighted by the exhibits submitted by both parties in connection with the present motion. (ECF No. 46). It is therefore proper to treat Defendant's motion as one for summary judgment.

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his]

pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

Plaintiff's "*pro se* status does not alleviate [his] burden to provide the facts necessary to demonstrate that a genuine issue of material fact remains for trial." *Jahn v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 4559927, at *2 (D. Md. May 13, 2020). "Although *pro se* pleadings are 'held to less stringent standards than formal pleadings drafted by lawyers,' they 'must still set forth facts sufficient to withstand summary judgment.'" *Simmons v. Standard Fire Ins. Co.*, No. PJM-08-1844, 2010 WL 1881843, at *3 (D. Md. May 7, 2010) (quoting *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002)).

## III.   ANALYSIS

### A.   Plaintiff Cannot Establish a Claim for Racial Discrimination Under Title VII Because Plaintiff Has Not Set Forth Evidence of an Adverse Employment Action

Defendant first argues that Plaintiff cannot make out a claim for racial discrimination under Title VII.  (ECF No. 62-1 at 5–9).  Defendant's argument is consistently framed as one against the sufficiency of the allegations in Plaintiff's Complaint.  Nevertheless, analyzing the record in this case and the evidence presented in connection with the motion demonstrates that summary judgment is proper in favor of Defendant regarding Plaintiff's Title VII claims.

A plaintiff pursuing a race-based discrimination claim under Title VII "must introduce evidence that '(1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably.'"  *Kent v. Md. Transp. Auth.*, No. CIV.A.RDB 05-2593, 2007 WL 5415558, at *10 (D. Md. May 1, 2007), *aff'd*, 276 F. App'x 314 (4th Cir. 2008) (cleaned up) (quoting *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004)); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012).

Defendant first argues that element (2) cannot be met because Plaintiff failed to plausibly allege satisfactory job performance in his Complaint.  (ECF No. 62-1 at 5).  But construing Defendant's motion as one for summary judgment and consulting the record in this case highlights that there exists a genuine dispute of material fact as to whether Plaintiff's job performance was satisfactory at the time of the alleged discrimination.  For instance, Plaintiff sets forth evidence that he received positive feedback on numerous occasions regarding his job performance both in the form of text messages sent to him regarding customer feedback as well as internal spreadsheets documenting Plaintiff's performance as "Fantastic," which denotes individuals who are "top

performers." (ECF No. 65-6). Plaintiff also submitted a photograph of an award that he purportedly received for being "Driver of the Month" in January 2021, although the photograph does not clearly indicate that the award was given to Plaintiff specifically. *Id.*

In addition to arguing that Plaintiff's Complaint does not sufficiently allege satisfactory job performance, Defendant also argues that Plaintiff's job performance was *not* satisfactory because the EEOC's investigation revealed that Plaintiff tested positive for marijuana in violation of Defendant's anti-drug policy. (ECF No. 62-1 at 5; ECF No. 62-5; ECF No. 62-6). However, Defendant's president, Ross Markajani, also represented in a communication to the EEOC in response to Plaintiff's charge of discrimination that (1) Defendant hired Plaintiff after Plaintiff failed two pre-employment drug tests (although Plaintiff passed a third test), and (2) that Mr. Markajani "always considered [Plaintiff] to be a safe and reliable driver." (ECF No. 65-5). The Court therefore concludes that there exists a genuine dispute of material fact regarding whether Plaintiff's job performance was satisfactory at the time of his alleged discrimination.

Defendant next argues that Plaintiff cannot satisfy element (3) because Plaintiff cannot establish that he was terminated or subject to constructive discharge. "An adverse action is one that adversely affects the terms, conditions, or benefits of employment." *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 446 (D. Md. 2022). "The alleged adverse action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Harris v. Charles E. Smith Life Cmtys.*, No. CV MJM-21-1242, 2022 WL 4777592, at *7 (D. Md. Oct. 3, 2022) (quoting *Harris v. Gen. Motors Powertrain*, 166 F.3d 1209 (4th Cir. 1999) (per curiam)). "Employment actions such as 'discharge, demotion, decrease in pay or benefits, loss of job, title or supervisory responsibility, or reduced opportunities for promotion' are typically found to be an adverse action."

*Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2008)).

Here, Plaintiff has not set forth evidence creating a genuine dispute of material fact supporting an inference that he experienced an adverse employment action.  While the name-calling Plaintiff experienced from his co-workers is reprehensible, this Court has consistently held that the use of vulgar language by co-workers generally does not constitute an adverse employment action for purposes of establishing a Title VII discrimination claim.  Neither would Defendant's declination to thoroughly address Plaintiff's concerns that customers also used vulgar language towards Plaintiff on isolated occasions.  *See Harris*, 2022 WL 4777592, at *7 ("However, harsh criticism, teasing, humiliation, yelling, bullying, and refusing to address employment-related complaints generally do not rise to the level of an adverse employment action."); *Roberts v. Saint Agnes Hosp.*, No. GJH-13-3475, 2015 WL 3932398, at *8 (D. Md. 2015) ("[M]ere insults that do not have a tangible effect on the terms and conditions of employment do not amount to an adverse employment action."); *Staggers v. Becerra*, No. CV ELH-21-0231, 2021 WL 5989212, at *17 (D. Md. Dec. 17, 2021) (collecting cases for the proposition that "The Fourth Circuit and judges in this District have said that incidents of yelling or bullying generally do not rise to the level of an

adverse employment action"); *Vedula v. Azar*, No. CV TDC-18-0386, 2020 WL 5500279, at *8 (D. Md. Sept. 11, 2020).[2]

Regarding Plaintiff's claims that certain co-workers complained that Plaintiff was working too slow, Plaintiff presents no evidence supporting a finding that Plaintiff was reprimanded for such conduct rather than this being the sort of "harsh criticism" noted above.  *Harris*, 2022 WL 4777592, at *7; *Smith v. Vilsack*, 832 F. Supp. 2d 573, 583 (D. Md. 2011); *see also Staggers*, 2021 WL 5989212, at *18 (describing that poor performance evaluations and reprimands do not constitute adverse employment actions under Title VII unless they "detrimentally alter the terms or conditions of the recipient's employment") (citing *Dorrtch v. Cellco P'ship*, 770 F. App'x 643, 647 (4th Cir. 2019)).  The same conclusion applies to any comments made regarding whether Plaintiff was under the influence.  The evidence indicates only that Plaintiff's manager told Plaintiff that Plaintiff was "high" in jest when Plaintiff had trouble opening a van's sliding doors, but there is no evidence indicating that Plaintiff's manager every reprimanded Plaintiff (verbally or in writing) for allegedly being under the influence or ever brought up that subject with Plaintiff again.  *See, e.g.* (ECF No. 62-7 at 47).

---

[2] Plaintiff also noted when submitting his internal complaints that he may have been "miss hearing people" when recalling that customers directed racial slurs at Plaintiff, further belying an assertion that customers' use of reprehensible language toward Plaintiff on sporadic occasions constituted an adverse employment action.  (ECF No. 65-4 at 2).  Plaintiff additionally argues that the use of racial slurs in this case can be properly considered as severe enough to alter the conditions of Plaintiff's employment based on *Pryor v. United Air Lines, Inc.*, 791 F.3d 488 (4th Cir. 2015).  However, *Pryor* involved a markedly different set of facts, as the plaintiff in that case discovered an anonymous paper note in her secured company mailbox combining the use of racial epithets with threats of violence. *Id.* at 490–91, 496–97.  Additionally, some of the conduct underlying Plaintiff's racial discrimination claim was not directed at Plaintiff.  For instance, although morally repugnant, there is no evidence suggesting that Plaintiff's manager's statement in Mr. Markajani's presence (which Mr. Makajani disputes ever happened) was directed at Plaintiff rather than the statement being made in an open space which Plaintiff overheard.  Plaintiff confirmed that the statement was made in Plaintiff's presence rather than to Plaintiff, that the individual who used "the N word" on that day never said it again, and that Plaintiff otherwise heard no other employee use such language at any other time during his employment.  (ECF No. 62-4 at 29).  Plaintiff also testified during his deposition that some of the crude treatment he experienced when making deliveries was not from customers, but from random bystanders.  (ECF No. 62-4 at 29–30).

Plaintiff also cannot establish that a constructive discharge occurred. "A constructive discharge is a form of an adverse employment action." *Dones v. Donahoe*, 987 F. Supp. 2d 659, 668 (D. Md. 2013). "In this circuit, the standard for constructive discharge requires a plaintiff to show both intolerable working conditions and a deliberate effort by the employer to force the employee to quit." *Id.* (citing *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993)). "To establish a constructive discharge, a plaintiff must show that she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign and that she actually resigned." *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 230 (D. Md. 2022) (cleaned up). "The conditions must go beyond ordinary discrimination." *Id.* Rather, "Courts evaluating constructive discharge claims must consider whether a plaintiff's workplace was so intolerable that she was compelled to resign under an objective, 'reasonable person' standard." *Id.* (citing *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006)). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko*, 434 F.3d at 262.

Plaintiff has not provided sufficient evidence that he was subjected to objectively intolerable working conditions from which a reasonable jury could conclude that a constructive discharge occurred. Plaintiff's EEOC charge alleges discrimination beginning June 2020 (ECF No. 62-7 at 80), his Complaint alleges discrimination beginning December 2020 (ECF No. 1 at 5), and his first EEOC communication alleges discrimination beginning February 2021 (ECF No. 62-7 at 47). Plaintiff's exhibits also indicate that the last dates which Plaintiff formally complained internally about mistreatment attributable to Defendants (rather than customers or bystanders) was June 18, 2021, when Plaintiff was told that he was driving too slowly, and June 27, 2021, when

Plaintiff was allegedly assigned a van without working air conditioning (discussed in further detail below).  (ECF No. 65-4; ECF No. 62-7).  But Plaintiff has not set forth any evidence plausibly demonstrating that his workplace was so objectively intolerable compelling his resignation given that (1) he endured the allegedly ongoing mistreatment for (a) roughly seven months if the earliest date of mistreatment was February 2021 according to the EEOC communication, (b) roughly nine months if the earliest date of mistreatment was December 2020 according to Plaintiff's Complaint, or (c) roughly fifteen months if the earliest date of mistreatment was June 2020 according to Plaintiff's EEOC charge; and (2) Plaintiff ended his employment with Defendant more than one month following his last formal internal complaint.  *See, e.g.*, *Landrau-Romero v. Banco Popular De P.R.*, 212 F.3d 607, 613 (1st Cir. 2000) (noting that there can be no constructive discharge where the plaintiff "does not resign within a reasonable time period after the alleged harassment"); *Turner v. D.C.*, 383 F. Supp. 2d 157, 172 (D.D.C. 2005) (noting same).  Plaintiff also indicated in his deposition that he resigned because he was worried that Defendant *may* eventually retaliate against him for lodging internal complaints, because Plaintiff *may* have decided to "just leave and go to school," and that Plaintiff *may* have had to take antidepressants "because of what was going on."  (ECF No. 62-4 at 26–27).  Further, Plaintiff explained that his work was "mostly independent" because his primary interactions with other co-workers were in the mornings when Plaintiff loaded his delivery van, but that Plaintiff was otherwise not around co-workers often and the "Majority of [Plaintiff's] day [was] outside delivering packages." *Id.* at 26.  A reasonable juror could not conclude that Plaintiff's workplace was objectively intolerable compelling his resignation given that he endured the alleged mistreatment for so long combined with Plaintiff's representations that he did not frequently interact with the other co-workers who allegedly created the intolerable work environment.

Plaintiff likewise has not presented evidence sufficient for a reasonable jury to conclude that any mistreatment of Plaintiff by his co-workers was a "deliberate effort by [Defendant] to force [Plaintiff] to quit," particularly in light of the fact that Plaintiff was simultaneously receiving positive feedback on his work performance and verbal praise from his managers in group settings regarding Plaintiff's job performance in late June or early July of 2021. *Dones*, 987 F. Supp. 2d at 668; ECF No. 65-4 at 2. In fact, Plaintiff explained in his deposition that Defendant actually took deliberate efforts to improve his working conditions throughout his employment, such as modifying Plaintiff's work schedule so that Plaintiff could continue attending courses at Virginia Tech. (ECF No. 62-4 at 56–58).

Plaintiff additionally bases his Title VII discrimination claim on his assertion that Defendant provided Plaintiff with unsafe vans on three discrete occasions. Plaintiff discusses the allegedly unsafe vans with reference to both his constructive discharge and retaliation claim. (ECF No. 65-1). Specifically, Plaintiff argues that he was given a vehicle with a scuffed tire, a vehicle with a screw lodged in the tire, and a vehicle without air conditioning on a particularly warm day. Forcing an employee to work under unsafe working conditions may constitute an adverse employment action under Title VII. *See Johnson v. United Parcel Serv., Inc.*, No. CV SAG-17-1771, 2020 WL 779459, at *7 (D. Md. Feb. 14, 2020), *aff'd*, 839 F. App'x 781 (4th Cir. 2021); *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (noting that changes in an "employee's current wealth, his current prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alternation[s] in the workplace" may constitute adverse employment actions). Regarding the scuffed tire, Plaintiff testified during his deposition that he was able to request an alternate van when presented with safety concerns, and that he believed he was able to switch vans when reporting the scuffed tire specifically but nevertheless

13

did not.  (ECF No. 62-4 at 51).  Regarding the vehicle with the screw in the tire, Plaintiff testified

that he could not recall whether he even drove the vehicle after noticing the screw in the tire and

provides no evidence indicating that he requested an alternate van.  *Id.* at 22.[3]  And as to the air

conditioning issue, Plaintiff's own internal complaint explained that the air unit in the van worked

initially when Plaintiff turned it on, but that Plaintiff later discovered the issue as he was delivering

packages that day.  (ECF No. 65-4 at 2).  Further, any claim that assigning this vehicle to Plaintiff

constituted an adverse employment action is further belied by the undisputed evidence that (1)

Plaintiff was permitted to return immediately upon informing dispatch that he believed the air

conditioning was not working, and (2) inspection reports for subsequent employees who used that

exact same van reported no issues with the air conditioning, either before or after their deliveries.

(ECF No. 62-7 at 59–60).  More notably, though, Plaintiff has set forth no evidence supporting the

inference that Plaintiff was assigned these trucks based on his protected status or that Plaintiff was

assigned these trucks because he engaged in any sort of protected activity like filing his various

internal complaints.

Even assuming *arguendo* that any of the above purported actions constituted adverse

employment actions sufficient to create a genuine dispute of material fact regarding element (3) of

Plaintiff's Title VII claim, Plaintiff has set forth no evidence regarding differential treatment of

similarly situated employees outside of Plaintiff's protected class.  His Complaint does not contain

any such allegations, and Plaintiff's opposition argues only that:

> What I alleged in my complaint was me being treated differently from similarly
> situated employees.  The defendant hasn't shown evidence or proof of any outside
> of my protected class that went thru and endured what I did form the name calling,
> being treated with trigger fingers, being called the 'n', bitch, gay, false

---

[3] Although Plaintiff alleges that he was told by supervisors "not to mark that the screw was in the tire," Plaintiff
provides no additional evidence supporting this assertion despite submitting numerous text message exchanges with
his co-workers/supervisors on other occasions.  (ECF No. 62-4 at 47).

accusations/remarks of having HIV, having to drive unsafe vehicles or not being able to work, etc.

(ECF No. 65-1 at 5).  Such conclusory assertions do not sufficiently create a genuine dispute of material fact, particularly in light of Plaintiff's concession that he was unaware of any other employees of any protected group(s) being subject to different treatment and that the majority of the Defendant's drivers are of the same protected class.  (ECF No. 62-4 at 30–31).[4]

B.  Plaintiff Has Not Set Forth Sufficient Evidence of Unlawful Retaliation

Plaintiff additionally argues that he was subject to unlawful retaliation for complaining about mistreatment.  Namely, Plaintiff argues that Defendant retaliated against Plaintiff for filing internal complaints regarding his mistreatment by requiring Plaintiff to drive unsafe vans with safety issues, complaining that Plaintiff worked too slowly, and increasing the number of deliveries on Plaintiff's route.  (ECF No. 65-1).

"Title VII bars employers from taking a materially adverse action against an employee in retaliation for opposing an unlawful employment practice covered under the statute, such as making a complaint of sex [or race] discrimination."  *Hunt v. Constantine Com. Constr.*, No. CV TDC-20-1846, 2023 WL 2744491, at *9 (D. Md. Mar. 31, 2023); 42 U.S.C. § 2000e-2(a).  "To prove a claim of unlawful retaliation, a plaintiff must demonstrate that (1) the plaintiff engaged in 'protected activity,' such as a complaint of discrimination; (2) the employer took a materially adverse action against the plaintiff; and (3) there was a 'causal connection between the protected activity and the adverse action.'"  *Id.* (quoting *Ray v. Int'l Paper Co.*, 909 F.3d 661, 669 (4th Cir. 2018)).  "If Plaintiff satisfies this burden, 'the burden then shifts to the employer to establish a legitimate non-retaliatory reason for the action.'  If the employer does so, Plaintiff 'then must show

---

[4] To the extent that Plaintiff's claims of unlawful racial discrimination are purportedly supported by actions taken by Mr. Markajani, such claims are further undercut by the fact that Mr. Markajani belongs to the same protected group as Plaintiff.  (ECF No. 62-7 at 14).

that the employer's proffered reasons are pretextual.'" *James v. Verizon*, 792 F. Supp. 2d 861, 868 (D. Md. 2011) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)).

The Court concluded *supra* that neither the van assignments nor criticisms regarding Plaintiff's delivery speed constituted adverse employment actions, so they likewise cannot be used to support Plaintiff's retaliation claim. This is further supported by Plaintiff's admission that there is no evidence suggesting that the allegedly unsafe vans were knowingly assigned to Plaintiff rather than being the product of random assignment. (ECF No. 62-4 at 22). Regarding the increased number of deliveries, "The Fourth Circuit has [] explained that a reassignment does not constitute an adverse employment action, where the reassignment causes no reduction in compensation, job title, level of responsibility, or opportunity for promotion." *Washington v. Balt. City Police Dep't*, No. 22-CV-02212-LKG, 2023 WL 6308090, at *3 (D. Md. Sept. 28, 2023). "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376

(4th Cir. 2004), *abrogated by Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967 (2024);[5] *Herkert v. Kijakazi*, No. 1:22-CV-03139-LKG, 2024 WL 1050831, at *7 (D. Md. Mar. 11, 2024).

Here, Plaintiff's unlawful retaliation claim based on his purported increase in daily deliveries cannot survive as a matter of law for several reasons. First, Plaintiff has not set forth evidence that completing the additional deliveries was *materially* adverse to Plaintiff. Plaintiff indicates nothing more than the additional deliveries being less appealing to or inconvenient for Plaintiff. There is no evidence supporting an inference that completing additional deliveries on some days materially affected Plaintiff's compensation, job title, level of responsibility, opportunity for promotion, or other tangible aspect of his employment. *See Martinez v. Henderson*, 252 F. Supp. 2d 1226, 1238 (D.N.M. 2002), *aff'd sub nom. Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) ("A minor alteration of job responsibilities alone is not an adverse employment action . . . Plaintiff has adduced no evidence indicating that the modification of his delivery route adversely affected his employment or resulted in significantly different responsibilities . . . Because the modification of the delivery route did not significantly change

---

[5] To be clear, the United States Supreme Court recently opined in *Muldrow* that various Circuits—including the Fourth—were improperly requiring plaintiffs alleging discrimination by employment transfer to demonstrate that such job transfers resulted in a "significant" change in an employment term or condition. 144 S. Ct. at 974. That case involved a plaintiff asserting a Title VII claim on the ground that she was unlawfully transferred to another position based on her sex. *Id.* at 971. However, the Court made clear that such a high bar still applied to plaintiffs pursuing unlawful retaliation claims under Title VII:

> The City's argument from precedent fares no better. It relies on [*Burlington*], which addressed Title VII's separate anti-retaliation provision. Under that section, an employer may not take action against an employee for bringing or aiding a Title VII charge. The Court held that the provision applies only when the retaliatory action is '*materially* adverse,' meaning that it causes '*significant*' harm. The City thinks we should import the same standard into the anti-discrimination provision at issue. But that would create a mismatch. *White* adopted the standard for reasons peculiar to the retaliation context. The test was meant to capture those (and only those) employer actions serious enough to dissuade[] a reasonable worker from making or supporting a charge of discrimination. If an action causes less serious harm, the Court reasoned, it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation.

*Id.* at 976 (emphasis added) (internal citations and quotations omitted).

Plaintiff's employment status and did not result in reassignment with significantly different responsibilities, the modification of the delivery route was not an adverse action.").  Second, the evidence indicates that Plaintiff first engaged in protected activity as early as March 17, 2021, when he submitted an inquiry with the EEOC regarding alleged mistreatment on approximately March 12, 2021, and in February 2021.  (ECF No. 62-7 at 43–47).  That inquiry contains no assertions as to the amount of deliveries Plaintiff was making on a daily basis at that time.  Rather, the first instance in which Plaintiff provides his number of purported daily deliveries was on April 4, 2021, when Plaintiff submitted follow-up notes in connection with an April 3, 2021, internal complaint to Amazon.  (ECF No. 65-4 at 3–4).  Plaintiff indicated at that time that he was making roughly 170 to 200 stops per day.  *Id.*  However, Plaintiff then indicated in a June 6, 2021, internal complaint to Amazon that there were other days that he was assigned to approximately 140 stops, including on June 5, 2021.  (ECF No. 62-7 at 53).

Such evidence indicates only that the amount of stops on Plaintiff's delivery routes fluctuated without any evidence supporting an inference that Plaintiff's stops were increased *because* Plaintiff engaged in any protected activity.  The evidence further indicates that the earliest clear instance in which Plaintiff took issue with his number of stops (April 2021) was roughly a month after Plaintiff's initial EEOC inquiry, which belies that any change in the number of stops on Plaintiff's route was causally related to any protected activity, especially given that Plaintiff was also assigned *less* stops shortly thereafter.  The fluctuation in delivery stops on a day-to-day basis is best reconciled by the third reason that Plaintiff has not sufficiently presented evidence of unlawful retaliation by virtue of assigning him additional deliveries on some days: Plaintiff explained in his deposition that *Amazon*, rather than Defendant, creates and assigns driver delivery routes.  (ECF No. 62-4 at 20–21).  Plaintiff also indicated in his deposition that his supervisors

could switch drivers' routes when needed, but there is no evidence of Plaintiff ever requesting a delivery route with less stops.  *Id.* at 29–30.  Accordingly, Plaintiff cannot establish that the fluctuating delivery routes assigned to him from Amazon constituted a materially adverse employment action supporting an unlawful retaliation claim against Defendant under Title VII. And because Plaintiff has set forth no evidence of other materially adverse employment actions for the reasons explained above, Plaintiff cannot make out a claim for unlawful retaliation under Title VII.

  C. <u>Plaintiff Has Not Set Forth Sufficient Evidence Supporting a Hostile Work Environment Claim</u>

Defendant also attacks the sufficiency of any hostile work environment claim.  "Title VII prohibits racial or sexual harassment that creates a hostile work environment for the harassed employee."  *Basemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020).  "To make such a claim," Plaintiff "must show that [he] was subjected to (1) unwelcome conduct, (2) based on [his] race or sex, that was (3) severe or pervasive enough to make [his] work environment hostile or abusive and (4) imputable to [his] employer."  *Id.* (citing *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)).  "To satisfy the second element of a hostile work environment claim, the plaintiff must demonstrate that she was harassed or otherwise discriminated against '*because of*' her protected class."  *Grady v. McCarthy*, No. CV ELH-17-1141, 2018 WL 3105769, at *22 (D. Md. June 22, 2018) (emphasis added) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).  "The plaintiff may satisfy this burden by showing that, 'but for' her protected class, she would not have suffered discrimination."  *Id.*  Regarding the third element:

> The severe or pervasive element has both a subjective and objective component. To show that [a] defendant's conduct was sufficiently severe or pervasive, the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. The circumstances a court considers in determining whether the alleged conduct is

objectively hostile include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be sure, the severe and pervasive element sets a high bar, such that the law tolerates a level of poor conduct by an employer that is at odds with the courtesy and respect that an employee might not unreasonably expect. As such, [R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.

Similarly, offhand comments[ ] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Indeed, even the utterance of an epithet may not, on its own, be enough to alter the conditions of employment under Title VII. Rather, a hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult.

*Faulkenberry v. Austin*, No. 1:22-CV-01150-JMC, 2024 WL 449297, at *7 (D. Md. Feb. 6, 2024).

The Court concludes under the above standards that Plaintiff has not set forth sufficient evidence supporting his claim for a hostile work environment. As explained above, the bulk of Plaintiff's allegations supporting his hostile work environment claim revolve around sporadic rude and callous treatment by Plaintiff's co-workers, which cannot rise to the level of severity or pervasiveness required to satisfy the third element. Nor does considering those instances in the aggregate rise to the level of creating a severe and pervasive hostile work environment under the totality of the circumstances. This is further supported by the fact that Plaintiff spent the majority of his workdays in his delivery van away from those who he mostly claims created the hostile work environment. With regards to any customer or bystander who treated Plaintiff poorly, Plaintiff cites *Equal Employment Opportunity Commission v. Costco Wholesale Corp.*, 903 F.3d 618 (7th Cir. 2018), for the proposition that Defendant subjected Plaintiff to a hostile work environment by failing to take adequate steps to protect Plaintiff from customers or strangers while Plaintiff was making deliveries. (ECF No. 65-1 at 4). However, just as with *Pryor*, that case involved notably different facts. In *Costco*, the Seventh Circuit Court of Appeals held that a "reasonable juror could

conclude that being hounded for over a year by a customer despite intervention by management, involvement of the police, and knowledge that he was scaring her would be pervasively intimidating or frightening to a person of average steadfastness." 903 F.3d at 626. That conclusion was based on testimony that a customer—constantly over the course of an entire year—followed the plaintiff, stared at the plaintiff from behind clothes racks in disguise, monitored the plaintiff's movements and asked the plaintiff to "account for her conversations with men"; made trips to the warehouse where plaintiff worked only to see the plaintiff rather than to shop, constantly asked the plaintiff out, and constantly tried giving the plaintiff his phone number despite the plaintiff reporting to both the police and her supervisor that the customer scared and intimidated her (which the customer was aware of). *Id.* Here, the evidence indicates only that Plaintiff heard some customers (or may have mistakenly heard customers) utter racial slurs on sporadic occasions while Plaintiff was delivering packages and that a random individual walking in Plaintiff's direction while Plaintiff was driving made an unsightly gesture to Plaintiff. The Court therefore declines to view Plaintiffs situation as analogous to *Costco* and concludes for the reasons above that Plaintiff has not set forth evidence sufficient for a reasonable jury to conclude that Defendant subjected Plaintiff to a hostile work environment.[6]

D.  <u>Plaintiff Has Not Set Forth Evidence of Unlawful Discrimination Under the ADA</u>

Plaintiff does not clearly articulate in either his initial Complaint or in his opposition to the present motion the grounds supporting his discrimination claim under the ADA. Regardless, claims of disability discrimination under the ADA require that "a plaintiff must prove that: (1) he

---

[6] Plaintiff also asserts that Defendant ignored his requests to switch delivery routes in light of customers' and bystanders' treatment of Plaintiff. However, Plaintiff explained in his deposition that he could not recall if he actually worked those same routes again after requesting the route changes. (ECF No. 62-4 at 47). In fact, Plaintiff admitted that he believed at least one of his routes was changed when he raised his concerns to his supervisors and that his "route[s] change almost majority of the time." *Id.*

has a disability, (2) he is a 'qualified individual' for the employment in question, and (3) his employer took adverse employment action against him because of his disability." *Haddaway v. Balt. Cnty., Md.*, No. CV BPG-18-1903, 2020 WL 1043310, at *4 (D. Md. Mar. 4, 2020) (citing *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015)). "As to the third element, adverse employment actions under ADA discrimination are analyzed under the Title VII standard." *Id.* at *5 (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001)); *Hindman v. Greenville Hosp. Sys.*, 947 F. Supp. 215, 219 n.* (D.S.C. 1996), *aff'd*, 133 F.3d 915 (4th Cir. 1997). Accordingly, Plaintiff's potential claims under the ADA must also be dismissed because, for the reasons explained above, Plaintiff has provided insufficient evidence to support a finding that he suffered an adverse employment action.[7] It is also unclear from the evidence submitted in connection with the present motion whether Defendant even had knowledge of Plaintiff's disability. *See* (ECF No. 62-7 at 15); *Pitts v. Md. Dep't of Transp.*, No. 1:23-CV-00983-JMC, 2023 WL 8806615, at *4 (D. Md. Dec. 20, 2023) (collecting cases for the proposition that an employer must have knowledge of a plaintiff's disability for an employer to face liability for unlawful disability discrimination in violation of the ADA).

---

[7] Plaintiff also does not shed light on his assertion in his initial Complaint that he was subject to discrimination based on gender/sex. (ECF No. 1 at 5). Plaintiff's claims of gender/sex discrimination appear to be premised on the fact that co-workers occasionally called Plaintiff "gay" and teased Plaintiff regarding a handbag he wore to work. However, similar to the insults described previously, such conduct cannot establish an adverse employment action supporting a Title VII claim that Plaintiff was discriminated against on the basis of his sex. Nor can this sporadic bullying reasonably be said to have created a work environment riddled with discrimination and harassment sufficient to support a hostile work environment claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 62), treated as a motion for summary judgment under Rule 56, is hereby **GRANTED**.  Summary judgment is entered in favor of Defendant regarding all purported counts of Plaintiff's Complaint and the Clerk of the Court is asked to close this case.


Date: <u>May 21, 2024</u>                            <u>          /s/                    </u>
                                                                J. Mark Coulson
                                                                United States Magistrate Judge